Sharon CHILDRESS, Dwayne Springer, Mike Frisbie, Stuart Ingraham, Rick Buchanan, Scott Rotering, Phillip Cook, David Hall, Tari Conroy, Lyle Goracke, Robert Hackel, Gerald Behling, Brandon Zeiler, and Ray Lucci, Randy Rennaker; Dan Wiseman, Jr.; Dan Wiseman, Sr.; Greg Holt; Steven Mossbrucker and Dave Osborn, Plaintiffs,

v.

DARBY LUMBER INC., a Montana corporation; and Bob Russell Construction, Inc., an Idaho corporation, Defendants.

No. CV99–16MDWM.

United States District Court, D. Montana, Missoula Division.

Jan. 4, 2001.

Lon J. Dale, G. Patrick HagEstad, Milo-dragovich, Dale, Steinbrenner & Binney, PC, Missoula, MT, for Plaintiffs.

Richard A. Reep, Reep, Spoon & Gordon, PC, Missoula, MT, for Defendants.

## ORDER

MOLLOY, District Judge.

### I. Introduction

There are four motions pending in this case: Plaintiffs' Motion for Partial Summary Judgment on the Applicability and Triggering of the Worker Adjustment Retraining and Notification Act, Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses, Defendants' Motion for Summary Judgment, and Plaintiffs' Motion to Certify Order Awarding Sanctions. The summary judgment motions amount to cross-motions for summary judgment.

I heard oral argument on the motions on November 16, 2000. Based on the briefs and supporting arguments, I conclude that the WARN Act does apply in this matter, that the exceptions to a 60–day notice do not apply here, and that Defendants' written notice was deficient as a matter of law.

I also find that certification of my Order awarding sanctions is inappropriate. The reasons for these conclusions are set forth below.

## II. Background

Darby Lumber Inc. shut down its sawmill operation on September 25, 1998. The shut down occurred on one day notice. All sawmill employees were laid off. The planer operation at the mill ran for several weeks before it too shut down and all its employees were laid off. Bob Russell Construction, a wholly-owned subsidiary of Darby Lumber, ran the log yard at the mill, and all the construction employees were laid off in the next few months.

On February 8, 1999 several former Darby Lumber employees filed suit. The essence of their claims involved allegations of violation of the Worker Adjustment Retraining and Notification (WARN) Act, 29 U.S.C. § 2101 et seq. That act requires a 60–day notice of layoffs in certain situations. Darby Lumber claims the WARN Act does not apply since it had less than 100 full-time employees. The act does not apply if there are fewer than 100 employees. Darby Lumber also claims that even if the WARN Act does apply, it was a "faltering company" and/or "unforeseeable business circumstances" existed that preclude application of the Act. Plaintiffs maintain that Darby Lumber and BRC are really one operation and together they had more than 100 employees. The argument is that they are a single employer for purposes of the WARN Act. Plaintiffs also claim that the exceptions do not apply here, but even if they do, WARN sanctions are warranted because the notice of termination was insufficient. The parties also dispute Plaintiffs' claim that they are owed payment for 60 calendar days, while Defendants maintain that if WARN Act liability is found, Plaintiffs are owed only for their total normal working days in the 60 days prior to layoff.

## III. Summary Judgment

Under Fed.R.Civ.P.Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party must establish that there is no general issue as to any material fact. A material fact is one which is relevant to an element of a claim or defense, and its materiality is determined by the substantive law governing the claim or defense. *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Once a moving party meets its burden that no genuine issues of material fact exist, the burden shifts to the party opposing summary judgment to show specific material facts which remain at issue. *Kaiser Cement Corp. v. Fischbach & Moore,* 793 F.2d 1100, 1103–1104 (9th Cir. 1986).

Allegations or denials in a pleading by a party opposing summary judgment do not create genuine issues for trial. There must be sufficient evidence supporting its claim of a factual dispute to require a judge or jury to resolve at trial. *T.W. Elec.,* 809 F.2d at 630.

The Supreme Court has held "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. Analysis

### A. WARN Act Employer

The purpose of the WARN Act is to provide workers of advance notice of plant closures and mass layoffs so that workers have time to adjust and seek other employment. *Alarcon v. Keller Industries,* 27 F.3d 386 (9th Cir.1994), 20 C.F.R. § 639.1(a). In general, the WARN Act requires employees of 100 or more full-time employees to give at least 60 days' advance notice of a plant closing if the

shutdown results in an employment loss by mass layoff at a single site of employment during any 30 day period for 50 or more employees excluding any part-time employees. 29 U.S.C. § 2101 *et seq.* A part-time employee is one "who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8). Employers must serve a written 60–day notice of termination "to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee." 29 U.S.C. § 2102(a). Without the required WARN Act notices, employees can recover pay and benefits for the period for which notice was not given, up to 60 days. 29 U.S.C. § 2104.

Under the WARN Act, an affected employee is one "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). An employment loss is "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." 29 U.S.C. § 2101(a)(6). A plant closing is the "permanent or temporary shutdown of a single site of employment or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding part time employees." 29 U.S.C. § 2101(a)(2).

Before liability can be imposed under WARN, certain statutory requirements must be met. The sequence is as follows:

> [T]he term "mass layoff" means a reduction in force which—
>
> (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30–day period for—

> (i)(I) at least 33 percent of the employees (excluding any part-time employees); and
>
> (II) at least 50 employees (excluding any part-time employees); or
>
> (ii) at least 500 employees (excluding any part-time employees).

29 U.S.C. § 2101(a)(3).

By regulation, these figures are calculated on a "snapshot" date, the date notice is first required to be given. *See* 20 C.F.R. § 639.5(a)(2). Layoffs occurring in separate reduction actions may be aggregated into a "mass layoff" even where the number of layoffs does not exceed both 50 people and 33 percent of the total number of employees, if each set of layoffs involves fewer workers than required by the two statutory thresholds and all layoffs occur within the same 90–day period. *See* 29 U.S.C. § 2102(d).

For purposes of this case, the layoff date is September 25, 1998. The "snapshot" date for the sixty day notice is July 27, 1998. Darby Lumber and BRC combined had more than 100 employees on July 27, 1998. Consequently, taken together, they meet the standard of an employer under the WARN Act. Unquestionably, Darby Lumber and BRC together laid off more than 50 full time employees within a 30 day period to trigger the mass layoff event delineated by 29 U.S.C. § 2101(a)(3). Nonetheless, Darby Lumber and BRC contend they are not a single employer under the Act. The argument continues that Darby Lumber alone had less than 100 employees on the snapshot date so the Act should not apply. Plaintiffs argue in response that W–3 forms from 1998 indicate that Darby Lumber had 124 people on its payroll. They also point out that in their view, Defendants' recalcitrance in discovery has prevented Plaintiffs from determining whether at least 100 of these 124 people fit the category of "full time employee" under the WARN Act.

Varying analyses are used to determine whether companies are a single employer

under the WARN Act. The most comprehensive approach is to use a three-part test that includes application of state corporate law to see if the entities are separate, application of single employer theory under federal labor law, and application of the WARN regulations. *See Local 397 v. Midwest Fasteners*, 779 F.Supp. 788, 790–92 (D.N.J.1992). The purpose of the inquiry is to determine if the relationship between the entities is structured so that the first controls the second and the first concurrently avoids its obligations under federal law. *International Brotherhood of Teamsters v. American Delivery Service Co. Inc.*, 50 F.3d 770, 776 (9th Cir.1995). The *American Delivery* panel chose to apply both federal labor law factors from the Labor Management Relations Act, 29 U.S.C. § 185, as well as WARN regulation factors in its analysis of single employer status. *Id.* Ultimately, there must be a "fact-specific inquiry whereby the court must determine from a multiplicity of criteria whether the operations of the parent and subsidiary are so interrelated" as to find an absence of an arm's length relationship between unintegrated companies. *Midwest Fasteners*, 779 F.Supp. at 792.

The Labor Management Relations Act factors used by the *American Delivery* panel to determine the single employer question include "(1) common ownership; (2) common management; (3) centralized control of labor relations; and (4) interrelation of operations." 50 F.3d at 775. "Common ownership is the least important factor, and the remaining three factors are guideposts only." *Id.* (internal citations omitted). These factors are similar to the WARN Act factors set forth in the Code of Federal Regulations.

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending on the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2).

BRC was a wholly-owned subsidiary of Darby Lumber, so the ownership was common. The companies had common directors and officers. Robert Russell was president of Darby Lumber and owned 49% of the company's stock. He was trustee for the remaining 51% of the company's stock owned by the employee stock option trust. Plaintiffs also claim that Darby Lumber represented to third parties that Darby Lumber and BRC management was fully integrated. The assertion is based on Independent Appraisal's Confidential Valuation Reports of Darby Lumber for 1997 and 1998, both of which state that "[f]inancial statements and management of this subsidiary [BRC] are fully consolidated."

Larry Guerrero was the manager of Darby Lumber, and Scott Schmidt, who was Robert Russell's son-in-law in July, 1998, was alternatively described as the manager of the trucking portion of BRC or the manager of BRC. Schmidt contacted Guerrero and Russell when decisions about BRC needed to be made. Darby Lumber managers were considered "higher management" to which BRC management ultimately answered. Robert Russell admitted that Schmidt managed the trucking at BRC, and that Russell controlled Schmidt's activities. Schmidt apprised Guerrero daily of BRC activities. Guerrero was considered the general manager for both Darby Lumber and BRC by other employees. These factors give rise to the compelling conclusion that the two companies were controlled by the same management.

The labor decisions for both companies were centralized. Guerrero moved employees from one company's payroll to the other so he could obtain more favorable worker's compensation rates. One book-

keeper, Kim Buckman, did the payroll for both companies. Employees of both companies participated in Darby Lumber's employee stock option trust. Russell made the decision to lay off employees of both companies. Guerrero authored and served the layoff notice to employees of both BRC and Darby Lumber.

Buckman and Guerrero both estimated that about 90% of BRC's income was directly related to Darby Lumber. BRC operated out of the mill site and ran the log yard there. It also hauled logs and chips for the mill. Essentially, BRC provided support services for Darby Lumber's saw mill, and the operations of BRC were intimately associated with Darby Lumber.

■ Defendants argue that the two companies have only a President, Secretary/Treasurer and Board of Directors in common, and that all other factors regarding the two companies are separate. They claim everything from corporate identity to closure and layoff of the employees was separate. However, analyzing single employer status under the WARN Act compels the conclusion that Darby Lumber and BRC were not operating at arm's length and they should be considered a single employer for purposes of the Act.

Based on my view of the Labor Management Relations Act and WARN Act factors for determining single employer status, I find BRC and Darby Lumber are a single employer for the purposes of the WARN Act. BRC and Darby Lumber together had more than 100 employees. They laid off more than 50 employees in a mass layoff. Consequently, the notice requirements of the WARN apply as a matter of law.

## B. WARN Act Exceptions

■ Defendants contend that even if Darby Lumber and BRC are a single employer for purposes of the WARN Act, the good faith exception and the exceptions to the 60–day notice provided by the WARN Act relieve them of liability here. The employer bears the burden of showing the existence of conditions that give rise to the

exceptions. *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996).

### 1. Good Faith Exception

The WARN Act provides for a good faith exception when the employer "had reasonable grounds for believing that the act or omission was not a violation" of the Act. 29 U.S.C. § 2104(4). Defendants argue that the good faith exception applies in this case. Plaintiffs, on the other hand, argue that Defendants were ignorant of the Act, and therefore any deviation from the Act could not have been in good faith. Defendants respond that although Russell and other managers had never heard of the Act, Guerrero had heard of the Act. At best, he had only a nodding acquaintance with the Act. Defendants argue that "any assessment of a company's good faith or grounds for its belief in the legal proprietary of its conduct is necessarily a finding of fact, to be disturbed on appeal only if clearly erroneous," citing *Saxion v. Titan–C–Manufacturing, Inc.*, 86 F.3d 553, 561 (1996). While this proposition is true, in the abstract, it must nonetheless be supported by the facts.

■ The good faith defense requires a showing by the employer of a subjective intent to comply with the Act as well as evidence of objective reasonableness by the employer in applying the Act. *In re Jamesway Corp.*, 235 B.R. 329, 345 (Bkrtcy.S.D.N.Y.1999). If there is not a material fact issue concerning one or both of these factors, good faith can be a matter appropriate for summary judgment. *Id.* Under the good faith exception, the employer must establish that it had "an honest intention to ascertain and follow the dictates of the [statute]" and that it had "reasonable grounds for believing that [its] conduct complie[d] with the [statute]." *Local 246 Utility Workers Union of America v. Southern California Edison Company*, 83 F.3d 292, 298 (9th Cir.1996) (quotation omitted).

■ In this case, Guerrero states that he thought he read about the WARN Act in a *Missoulian* newspaper article. His recollection was nonspecific but he thought the article was about the closure of the Crown Pacific mills, a closure that took place before the Darby Lumber shutdown. The *Missoulian* newspaper article produced by Defendants to support their argument about the Crown Pacific closures makes no mention of the Act. While the assessment of good faith is generally a determination of fact, in this case Plaintiffs have shown that Guerrero's claims of prior knowledge of the Act are based on a newspaper article that does not verify his assertion because it makes no mention of the Act. Furthermore, Defendants have not met their burden of showing proof that would justify an inference that they tried to find out whether the WARN Act applied to Darby Lumber and BRC. Defendants have also failed their burden of producing proof that their intent is supported by objective evidence that their conduct gave them reasonable grounds to believe that Darby Lumber and BRC were complying with the Act. Summary judgment finding as a matter of law that the good faith exception does not apply is appropriate here because Defendant has not produced proof that supports either an inference or a direct finding that they acted in good faith.

### 2. Business Circumstances Exception

The sixty-day notice required by the WARN Act may be shortened two ways: first, if the plant closing was caused by business circumstances that were not reasonably foreseeable at the snapshot day; or second, if the employer was a "faltering company" that was "actively seeking capital or business to avoid or postpone the plant closing and the employer reasonably believed the giving of notice would have prevented the employer from obtaining the needed capital or business." *Burnsides v. MJ Optical, Inc.,* 128 F.3d 700, 703 (8th Cir.1997) (citing 29 U.S.C. § 2102(b)).

Before the business circumstances exception applies, the proof must show a change in circumstance caused by a "sudden, dramatic, and unexpected action or condition outside the employer's control." (20 C.F.R. § 639.9(b)(1)). Whether this has occurred is measured by the employer's commercially reasonable business judgment. It is a reasonable foreseeability test. *Loehrer,* 98 F.3d at 1060 (citing 20 C.F.R. § 639.9(b)(1)–(2)).

Defendants argue that a serious and immediate financial crisis arose in September 1998 that caused Darby Lumber and BRC to lay off workers and close the mill. Russell testified in deposition that several factors led to the operation suddenly running out of money. He also testified that he knew it was coming. In other words, the financial crunch was foreseeable. US Bank, which provided the credit line for Darby Lumber, notified the company on multiple occasions throughout 1998 that the company was in violations of its covenants, and that the company needed to come into compliance or risk losing credit with the bank. Defendants also admit that the market price for Darby Lumber's products was in a "prolonged" depressed state, and that Darby Lumber's operations lost money each month since at least December 1997. Defendants further admit that they considered layoffs and shutdowns for at least five months before the eventual shutdown in September.

Even though Darby Lumber claims its financial crisis had a sudden onset, there is no trigger event to bring on a "sudden, dramatic, and unexpected action." The financial crisis was steadily increasing all of 1998. There was no sudden contract cancellation (*Cf.Loehrer, supra*), no strike at a major supplier, no "unanticipated and dramatic major economic downturn," or other sudden situations contemplated by the WARN Act or its regulations. 20 C.F.R. § 639.9(b)(1). While Darby Lumber argues that a triggering event took place when U.S. Bank closed its line of credit, this argument does not work. The

loss of credit did not happen until November 1998, more than a month after the layoff event.

■ An employer is not required "to accurately predict general economic conditions that also may affect demand for its products or services." 20 C.F.R. § 639.9(b)(2). However, an employer must exercise the reasonable judgment of a similarly situated employer. *Id.* While Defendants suggest that no shutdown notice is the industry standard, pointing out the Crown Pacific shutdown, the argument is at odds with the law's purpose. A reasonable employer similarly situated would have noted that the market trend did not make any upswings, contrary to its traditional behavior. The gathering financial crisis was reason to consider the Act's Application and Implementation. Darby Lumber has not met its burden of producing material facts to show that the business circumstances exception should apply. Rather, it relies on inferences that cannot be construed as reasonable in light of the clear and massive trends in the industry in 1998.

### 3. The Faltering Company Exception

Darby Lumber and BRC make the additional claim that the faltering company exception applies here. The faltering company exception "applies to plant closings but not to mass layoffs and should be narrowly construed." 20 C.F.R. § 639.9(a). The regulations require (1) that an employer must be able to identify specific actions it was taking to seek capital or business at the time the 60–day notice was due; (2) there had to be a realistic chance of getting the financing; (3) the financing had to be sufficient to avoid or postpone the shutdown; and (4) the employer had to believe in good faith that providing notice of layoff would preclude opportunities for obtaining financing. *Id.*

■ In 1998, Darby Lumber was constantly negotiating its loan and credit line with U.S. Bank. In July, when notice was due if the Act was to be complied with, Darby Lumber was seeking financing. Defendants point out that the optimism Guerrero expresses in a July 27, 1998 letter to U.S. Bank about the economic outlook of the company is an indication of the good faith effort to obtain funding. Given U.S. Bank's admonishments, however, Darby Lumber had no realistic chance of getting enough financing to stave off a shutdown. Darby Lumber also provides no proof, or logical inference, that U.S. Bank or any other financing source it was seeking in July would have been unwilling to provide financing if it knew about any notice of lay-offs given to employees. The burden here lies squarely on Darby Lumber, and it did not provide evidence as required by regulation. *See* 20 C.F.R. § 639.9(a)(4). Further, it is a stretch to say whether Darby Lumber can claim any good faith argument for lack of providing notice when it was unaware that sixty-day notice was required. The faltering company exception does not apply.

### C. Adequacy of the Notice

Darby Lumber would still be liable even if any of the exceptions applied because its notice was inadequate. When the notice period is foreshortened pursuant to an exception, an employer "must give as much notice as is practicable, and 'at the time notice is given [the employer must] provide a brief statement of the reason for reducing the notice period, in addition to the other elements [of proper notice] set out in § 637.'" *Alarcon,* 27 F.3d at 389 (citing 20 C.F.R. § 639.9). An employer's "statement of its basis for a shortened notice period should set forth the underlying factual events which led to the shortened period, thereby allowing workers to understand the employer's situation and its reasons for shortening the notice period." *Alarcon,* 27 F.3d at 389.

> [A]lthough the statement may be brief, it is not enough for an employer simply to cite a statutory exception, stating, for example, "the notice is short because we are a faltering company." Such a state-

ment provides no understanding of the underlying conditions or state of affairs causing the shortened notice, and it lacks any semblance of specificity or detail. Instead, the company must give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate, specific explanation to affected workers. *Id.* at 390. Further, "an employer omits vital information at its peril" from the notice. If the stated basis for the shortened notice is later determined not to be the cause of the shortened notice, the notice may be found inadequate. *Id.* at 391.

■ In this case, Darby Lumber was unaware that it needed to give a 60–day notice, much less inform its employees of any reasons why the notice was less than the statutorily required 60 days. The notice served by Guerrero states that the company "sustained tremendous losses since January," and that the company's financial condition forced "some serious decisions." "Due solely to the dreadful lumber market," Darby Lumber saw "no other solution" than to "have a major layoff." There is neither mention of a foreshortened notice, nor the specific reason why the notice is foreshortened. This deficiency makes Darby Lumber liable under the WARN Act.

Defendants make an unsound equitable argument that Darby Lumber is being held to the same standards as General Motors when Darby Lumber is not a large manufacturing concern on the scale of General Motors. Surely Congress was aware of the scope and breadth of its Act. By the terms of the WARN Act, it applies to Darby Lumber as well as to General Motors. Size or wealth do not confer special status in the law's application.

### D. 60 calendar days or 60 work days

Plaintiffs argue that Darby Lumber owes back pay and benefits for each of 60 calendar days, as allowed by the Third Circuit. *See United Steelworkers of America v. North Star Steel Co.*, 5 F.3d 39, 43 (3d Cir.1993). The rule in the Ninth Circuit, and the majority of other circuits, however, is that Darby Lumber owes back pay and benefits for the days employees normally would have worked in the prior 60 days. *Burns v. Stone Forest Industries, Inc.*, 147 F.3d 1182, 1185 (9th Cir. 1998).

### E. Individuals

There is an issue about the applicability of the WARN Act to two of the named plaintiffs, David Hall and Stuart Ingraham. Hall and Ingraham both received the legally deficient notice from Guerrero on September 25, 1998, but Hall worked until November 30, 1998 before he was laid off, while Ingraham worked until October 2, 1998, when he quit voluntarily rather than accept a reassignment.

#### 1. David Hall

Hall was shown a copy of the written layoff notice by Guerrero in September 1998. He never received one with his paycheck. On November 17, 1998 Bob Russell informed Hall verbally that Hall's last day would be November 30, 1998. Defendants argue that Hall was given a 60 day notice because he worked more than 60 days after September 25, 1998. Plaintiffs claim that the original notice was defective as a matter of law, and that 20 C.F.R. § 639.10 requires additional notice when a plant closing or mass layoff is extended beyond the date of the original notice.

Under 20 C.F.R. § 639.10, if the plant closing or mass layoff is postponed for less than 60 days from the original planned date, additional notice should be given as soon as possible. The supplemental notice should reference the earlier notice and reasons for the postponement. If the delay is more than 60 days, then additional notice should be treated as new notice, but "[r]olling notice, in the sense of routine periodic notice, given whether or not a plant closing or mass layoff is impending, and with the intent to evade the purpose of

the Act rather than give specific notice as required by WARN, is not acceptable." 20 C.F.R. § 639.10(b).

■ When Hall was terminated, there was neither a mass layoff event nor a plant closing. The remedial provisions of 29 U.S.C. § 2102(d), which would stretch the applicable time period to 90 days, do not apply because the primary mass layoff event on September 25, 1998 triggered the WARN Act. Darby Lumber and BRC had less than 100 employees at the snapshot day for Hall's layoff, so the WARN Act does not apply to his termination. Defendants are therefore entitled to summary judgment regarding the claims of David Hall under the WARN Act.

### 2. Stuart Ingraham

Ingraham left his job voluntarily rather than accept reassignment. Prior to the layoff, Ingraham had operated heavy equipment in the Darby Lumber log yard. On October 2, 1998 Ingraham was assigned to work at a log landing near Lolo, Montana. Ingraham considered the work dangerous and felt he was not trained to do the work the company was asking him to perform. Plaintiffs argue that this constitutes a constructive discharge or involuntary termination under 20 C.F.R. § 639.3(f)(2). Defendants argue that Ingraham's departure was voluntary, and he was offered a transfer to a different site of employment within a reasonable commuting distance when the work at the mill site was consolidated. By this view, there was no "employment loss" for him under the WARN Act, citing 29 U.S.C. §§ 2101(a)(6) and 2101(b)(2)(A).

Constructive discharge is not defined in the WARN Act. Thus, Montana statutory provisions for constructive discharge apply. Under Montana law, "[c]onstructive discharge means the voluntary termination of employment by a employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative." M.C.A. § 39–2–903(1). A determination of constructive discharge

"depends on the totality of circumstances, and must be supported by more than the employee's subjective judgment that working conditions are intolerable." *Kestell v. Heritage Health Care Corp.*, 259 Mont. 518, 858 P.2d 3, 7 (1993) (quotation omitted).

■ Determination whether conditions are intolerable is normally a question for factfinders. *Id.* However, even if conditions of the reassignment from heavy equipment operator to log landing worker are viewed in a light most favorable to Ingraham, it does not rise to the level of constructive discharge here. Here Ingraham anticipated that conditions would be intolerable at the log landing without ever actually arriving at the site to find out what the conditions would be. Given the range of jobs that BRC had remaining for its employees, reassignment of Ingraham to work at a log landing was not unreasonable. Plaintiffs note that Ingraham had safety and training concerns about working at the log landing. A reasonable alternative to quitting could certainly have been refusing to perform certain tasks until safety measures were put in place and he was given the proper training. However, Ingraham never arrived at the landing and never discovered if proper training and safety measures would be in place. A totality of the circumstances test here indicates that Ingraham's speculation about potential intolerable situations is not enough to warrant a finding of constructive discharge, therefore there was no employment loss for Ingraham for purposes of the Act. Consequently, Defendants are entitled to summary judgment regarding claims of Stuart Ingraham under the WARN Act because he voluntarily departed from his employment.

### F. Motion to Certify

Plaintiffs want me to certify the sanction order against Defendants for immediate appeal. They are afraid that possible funds of the Defendants now available will be gone if the ruling is not now certified.

Darby Lumber opposes the motion, arguing that it is an unnecessary multiplication of paperwork in this case, and Plaintiffs should wait until the end of the case for a single appeal. Defendants argue further that the motion is untimely, since the motions deadline in this matter was October 1, 2000, and Plaintiffs filed the motion on November 3, 2000.

Fed.R.Civ.P. 54(b) allows a court to direct the entry of judgment as to less then all of the claims or parties "only upon an express determination that there is no just reason for delay." I conclude that certification is unwarranted here.

Wherefore IT IS ORDERED that:

1. Plaintiffs' Motion for Partial Summary Judgment on the Applicability and Triggering of the Worker Adjustment Retraining and Notification Act (docket # 157) is GRANTED as delineated above.

2. Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses (docket # 160) is GRANTED as delineated above.

3. Defendants' Motion for Summary Judgment (docket # 163) is DENIED in part and GRANTED in part as delineated above.

4. Plaintiffs' Motion to Certify Order Awarding Sanctions (docket # 181) is DENIED.

The clerk of court is directed to notify the parties of the entry of this order.