**SNIDER, et al., Plaintiff,**

v.

**COMMERCIAL FINANCIAL SERVICES, INC.,**
**Defendant.**

**No. 01CIV571P.**

United States District Court,
N.D. Oklahoma.

Oct. 31, 2002.

Mitchell Marion McCune, Jed Eric Penney, McCune Penney & Wheatley, Tulsa, OK, for the appellants.

Jerry L. Switzer, Jr., Robert R. Stauffer, Jenner & Block, Chicago, IL, Ronald Eugene Goins, Neal Edward Tomlins, Tomlins & Goins, Tulsa, OK, Larry M. Wolfson, Shaw, Gussis, Fishman, Glantz & Wolfson, LLC, Chicago, IL, for the appellee.

## ORDER AFFIRMING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

PAYNE, Chief Judge.

On June 7, 2002, the United States Magistrate Judge entered his Report and Rec-

ommendation that the decision of the Bankruptcy Court be reversed and remanded for calculation of back pay and benefits. The plaintiffs have filed a partial objection and the defendant has filed an objection to the Magistrate Judge's Report and Recommendation within the time prescribed by law. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a).

This Court finds that the Report and Recommendation of the Magistrate Judge is supported by the record. Therefore, upon full consideration of the entire record and the issues presented herein, this Court finds and orders that the Report and Recommendation entered by the United States Magistrate Judge on June 7, 2002, be **AFFIRMED** and **ADOPTED** by this Court as its Findings and Order.

## *REPORT AND RECOMMENDATION*

MCCARTHY, United States Magistrate Judge.

The instant appeal from the United States Bankruptcy Court for the Northern District of Oklahoma is before the undersigned United States Magistrate Judge for report and recommendation.

Appellants, a Class of former employees of Commercial Financial Services, Inc. (CFS), appeal from a decision of the Bankruptcy Court finding that CFS is not liable to members of the Class for violating the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101, *et seq.* Generally, the WARN Act requires an employer to give its employees sixty days notice of a mass layoff, or be liable to the employees for wages and benefits for each day notice was not given. For the reasons discussed herein, the undersigned recommends that the Bankruptcy Court decision be REVERSED and REMANDED to the Bankruptcy Court for entry of judgment in favor of Appellants and calculation of damages under 29 U.S.C. § 2104.

## I. *JURISDICTION AND STANDARD OF REVIEW*

 The District Court has jurisdiction over this appeal under 28 U.S.C. § 158. The Bankruptcy Court's legal conclusions are subject to *de novo* review. *Phillips v. White (In re White)*, 25 F.3d 931, 933 (10th Cir.1994). The Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (10th Cir.1988).

The issues raised by Appellants deal with the Bankruptcy Court's application of the law to the largely undisputed facts of this case, therefore the undersigned has conducted a *de novo* review.

## II. *Bankruptcy Court Decision*

The Bankruptcy Court found that because the parties stipulated to facts which established a *prima facie* violation of the § 2102(a)(1) requirement to provide employees sixty days advance notice of a mass layoff, the burden shifted to CFS to show that "the mass layoff [was] caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required" and that CFS gave "as much notice as [was] practicable and at that time ... [gave] a brief statement of the basis for reducing the notification period." *Memorandum Opinion*, p. 6, quoting 29 U.S.C. § 2102(b)(2)(A) and (b)(3).

The Bankruptcy Court found that CFS met its burden of proving that the mass layoff of January 8, 1999, was caused by unforeseeable business circumstances and that CFS gave the best notice of the layoff practicable. Therefore, the Bankruptcy Court concluded that CFS was not liable for violating the WARN Act.

### III. *ISSUES ON APPEAL*

Appellants argue that the bankruptcy decision should be reversed for the following reasons:

1) The written notice CFS provided to its employees did not meet the statutory and regulatory requirements of the WARN Act;

2) CFS was estopped from presenting a statutory defense to its failure to provide 60–days advance notice of the mass layoff;

3) CFS did not meet its burden of establishing that the mass layoff was caused by business circumstances that were not reasonably foreseeable;

4) CFS did not provide as much notice as was practicable.

### IV. *DISCUSSION*

The record contains considerable information about the complicated financial structure of CFS and problems which developed concerning its financing.[1] However, because CFS relies solely on the changed advice it received from Goldman Sachs to support its defense, only the following undisputed facts are central to the determination of this appeal. In August 1998 the owners of CFS decided to try to sell the business and in September 1998 CFS hired an advisor, Goldman Sachs, to conduct the sales process. Goldman Sachs advised CFS that during the sales process it should continue the status-quo of its current operations. CFS accepted this advice and began the sales process without altering its current operations. After the sales process had been ongoing, Goldman Sachs changed its advice and advised CFS that "CFS's bloated workforce was a deterrent to generating interest in CFS." *Memorandum Opinion* at 26. Based on the changed advice, CFS implemented a mass layoff on January 8, 1999, without affording its employees the sixty days notice required by the WARN Act.

■ CFS contends that the changed advice from Goldman Sachs was the sole unforeseeable business circumstance which caused the layoff and excused it from providing the sixty days notice.

The WARN Act, 29 U.S.C. § 2101, *et seq.*, provides the substantive law in this case. The applicable provisions of the WARN Act and its regulations are as follows:

> An employer shall not order a ... mass layoff until the end of a sixty day period after the employer serves written notice of such an order.

29 U.S.C. § 2102(a).

> An employer may order a ... mass layoff before the conclusion of the sixty day period if the ... mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b)(2)(A). According to the regulations promulgated by the Secretary of Labor pursuant to Congressional direction, 29 U.S.C. § 2107:

> (1) An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is

---

1. A number of difficulties befell CFS in the months preceding the layoff: (1) an anonymous letter alleging improprieties in reporting to security holders was sent to bond ratings agencies, causing them to downgrade or suspend CFS bond ratings; (2) a temporary restraining order was issued against CFS which froze $66 million in assets; (3) holders of $141 million of CFS notes declared a default and (4) CFS filed a voluntary bankruptcy petition to avoid the filing of an involuntary petition for bankruptcy. CFS did not rely on any of these factors as constituting the unforeseeable business circumstance entitling it to a reduction of the sixty day WARN Act notification period.

caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. A principal client's sudden and unexpected termination of a major contract with the employer, a strike at a major supplier of the employer, and an unanticipated and dramatic major economic downturn might each be considered a business circumstance that is not reasonably foreseeable. A government ordered closing of an employment site that occurs without prior notice also may be an unforeseeable business circumstance.

(2) The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services.

20 C.F.R. § 639.9(b). Further, the purpose of the WARN act is to:

provide protection to workers, their families and communities by requiring employers to provide notification sixty calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a). Thus, the WARN Act prevents an employer from implementing a mass layoff solely with its own economic interest in mind. The employer must provide its employees with the sixty day notice required by the Act, unless an exception applies.

■■■■ The WARN Act is a remedial statute and must be construed broadly to effectuate its purposes. *Solberg v. Inline Corp.*, 740 F.Supp. 680, 685 (D.Minn.1990) *citing Belland v. Pension Benefit Guaranty Corp.*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). Exceptions to the sixty day notice requirement are to be narrowly construed and the employer has the burden to prove the exception applies. *Carpenters District Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir.1994).

■■■■ Initially, the Court must determine whether the mass layoff was *caused* by the asserted business circumstance. *Bradley v. Sequoyah Fuels Corp.*, 847 F.Supp. 863 (E.D.Okla.1994). If the layoff was not "caused" by the asserted business circumstance, the defense cannot apply. Employers may decide to layoff employees based on any number of economic factors. However, not every layoff decision will fall within an exception to the notice provision of the Act. Rather, only those decisions based on unforeseeable business or economic circumstances which by their very nature necessitate or impel the layoff will qualify as the "cause" of a layoff. *See Carpenters Dist. Council v. Dillard Dept. Stores*, 778 F.Supp. 297, 306–7 (E.D.La. 1991).

In the months preceding the layoff, there were a number of circumstances which affected the financial condition of CFS and its ability to continue operating at its pre-layoff capacity. *See* footnote 1. However, CFS asserted, and the Bankruptcy Court found, that only Goldman Sach's changed advice was the unforeseeable business circumstance which "caused" the mass layoff. *Memorandum Opinion* at 28, n. 35.

The record establishes that CFS's business (i.e. the market for its products and services, its financial condition, and its need for the services of its employees) was *exactly* the same before and after Goldman Sachs changed its advice. Although the Goldman Sachs changed advice affected the decision-making process of CFS management concerning the sales process, the changed advice did not, by its very nature, necessitate or "cause" the layoff. Therefore, the undersigned finds that the evidence does not support the underlying premise of the Bankruptcy Court decision that Goldman Sachs changed advice "caused" the layoff. This finding necessitates reversal of the Bankruptcy Court decision.

■ Even if Goldman Sachs changed advice were the "cause" of the layoff, the question arises whether the unforeseeable business circumstance defense is properly applied to the process of selling a business, or is confined to circumstances affecting the conduct of the underlying business. The undersigned is not persuaded that the defense should be applied to the sale of CFS.

■ The statute refers to a "mass layoff ... caused by business circumstances." This plain language, and that of the related regulations, points to the conclusion that the business circumstances which cause a layoff must relate to the economic conditions of operating the business itself, rather than conditions encountered in the sale of the business. The regulations provide the following examples of unforeseeable business circumstances: a principal client's termination of a major contract; a strike at a major supplier; a dramatic major economic downturn; and the government closing of the employment site.

20 C.F.R. § 639.9(b)(1). Each of these examples relate to operating the business. None are similar to the situation of having difficulty in attracting buyers for the business itself.[2] Based on the language of the WARN Act and the regulations, the undersigned concludes that there must be an economic connection between the asserted unforeseeable business circumstance and the operation of the business.

This conclusion is also supported by the examples of unforeseeable business circumstances found in the cases considering that defense. *Hotel Employees and Restaurant Employees International Union Local 54 v. Elsinore Shore Associates,* 173 F.3d 175 (3rd Cir.1999) (government closing of casino was unforeseeable business circumstance); *Halkias v. General Dynamics Corp.,* 137 F.3d 333 (5th Cir.1998) (Government contractor entitled to unforeseeable business circumstance exception to WARN Act notice where, despite cost overruns, Secretary of Defense and Navy had expressed high support for A–12 attack aircraft program, but later terminated program); *Loehrer v. McDonnell Douglas Corp.,* 98 F.3d 1056 (8th Cir.1996) (same); *Jurcev v. Central Community Hospital,* 7 F.3d 618 (7th Cir.1993) (In hospital closing case, hospital foundation's decision to cease financial support of hospital was a sudden, dramatic and unexpected and hence unforeseeable circumstance outside control of employer); *Childress v. Darby Lumber Inc.,* 126 F.Supp.2d 1310 (D.Mont.2001)(gathering financial crisis of lumber company did not fall within unforeseeable business circumstance exception to WARN Act notice where operations has lost money each month during previous year); *Bradley v. Sequoyah Fuels Corpo-*

**2.** The WARN Act addresses the sale of a business only in relation to defining employer for the purpose of establishing whether the buyer or seller bears the responsibility/liability for WARN Act notification. 29 U.S.C. § 2101(b)(1).

*ration,* 847 F.Supp. 863 (E.D.Okla.1994) (unforeseeable business circumstance exception to WARN Act notice applied to major off-site release of nitrogen dioxide which precipitate government mandated shut-down of uranium processing plant); *Jones v. Kayser–Roth Hosiery, Inc.,* 748 F.Supp. 1276 (E.D.Tenn.1990)(loss of plant's largest and most profitable customer was unforeseeable business circumstance causing plant closing).

One reported case applied the unforeseeable business circumstance to the sale of a business. *Burnsides v. MJ Optical Inc.,* 128 F.3d 700 (8th Cir.1997).[3] Without discussing the distinction between the sale of the business and economic problems in the underlying business, the Court applied the unforeseeable business circumstance defense. However, the facts of *Burnsides* are significantly different from this case. In *Burnsides,* the employer had a signed letter of intent for the sale of the unprofitable business and reasonably believed that the purchaser would continue to employ the employees. Two days before the closing, the purchaser pulled out of the deal, opting to purchase only certain assets. In contrast, CFS had only a sales *process* in place that *might* result in a sale. If there was a sale, there was a *chance* the purchaser *might* retain the employees. The undersigned finds that the speculative scenario involving the CFS sales *process* to hopefully identify a *potential* buyer who *might* retain some employees is so markedly different from *Burnsides,* that case is not instructive. Furthermore, the notion of a sale occurring to save employee jobs is more applicable to the situation covered by the faltering business exception, which CFS did not assert, and which would not apply to this case.[4]

---

**3.** The Bankruptcy Court cited a casino closing case, *Hotel Employees and Restaurant Employees International Union Local 54 v. Elsinore Shore Associates,* 173 F.3d 175 (3rd Cir. 1999) as being not unlike CFS. *Memorandum Opinion* at 26, n. 32. In *Elsinore* the owners were trying to sell the casino, but nothing about the sales process was involved in closing the casino. The casino was suddenly closed by a government agency. The *Elsinore* case does not support the proposition that an employer can avoid WARN Act liability based on circumstance involving the sale of a business.

**4.** The WARN Act provides an exception for a faltering business. 29 U.S.C. § 2101(b)(1). That exception permits less than sixty days notice of a *shut down* if the employer is actively seeking capital or business which, if obtained, would avoid or postpone the shut down and the employer believes the notice would preclude the employer from obtaining the needed capital or business. CFS did not assert the faltering business exception.

However, the analysis employed by the Bankruptcy Court in this case mirrors aspects of the faltering business defense. The Bankruptcy Court concluded: that the sale of CFS was a commercially reasonable process for CFS to engage in *Memorandum Opinion* at 24, (similar to seeking capital under faltering business); and that notice of a possible layoff would disrupt the sales process *Id.* at 25, (specifically recognized as an acceptable reason to forego notice under the faltering business exception).

If CFS had asserted the faltering business exception and if the case had involved a shutdown, the Bankruptcy Court's analysis would probably be appropriate. However, the analysis does not fit within the unforeseeable business circumstance exception.

In addition, much of the Bankruptcy Court's analysis focused on the commercial reasonableness of CFS's decision-making process, whether the actions taken would be beneficial to CFS, and whether the decisions were rational or wise from CFS's stand-point. *Memorandum Opinion* p. 24–27. The undersigned notes that all decisions made by CFS concerning the sales process and layoff appear to have been commercially reasonable vis-a-vis the attempted sale of CFS. However, finding that CFS was commercially reasonable in its sales process does not establish a defense under the WARN Act.

Commercial reasonableness is mentioned in the regulations in connection with determin-

Finally, even if the changed advice was the "cause" of the layoff, and even if the unforeseeable business circumstance exception applied to the sale of CFS, there is no evidence in the record of any adverse business circumstance that occurred in the market of selling the business itself. There was no evidence presented from any of the prospective buyers who examined CFS. Nor was there any evidence presented from CFS's advisor, Goldman Sachs. The only evidence concerning the market for the sale of CFS was the testimony of CFS executives, as to their understanding of Goldman Sachs' changed advice to CFS. That information was not admitted for the truth of the matter asserted, but for the effect that it had on the CFS decision makers. [R. Tab 21 (Transcript) p. 59–60; Tab 11 (Order Denying Class Motion for Partial Summary Judgment) p. 5–7]. Thus, the only evidence bearing on the topic of the changed business circumstances for the sale of CFS was evidence that CFS's perception of the business circumstances for the sale of CFS had changed. Even if changed circumstances concerning the sale of CFS as a business could satisfy the exception, the undersigned finds that the evidence was insufficient to establish the affirmative defense.

Therefore, even in this situation judgment should be entered for Appellants.

In sum, the undersigned finds that CFS failed to prove that its proffered unforeseeable business circumstance was the "cause" of the mass layoff. Further, in view of the WARN Act's clear mandatory language, its purpose of providing protection for employees, and the requirement that exceptions be narrowly construed, the undersigned finds that the unforeseeable business circumstance does not apply to unforeseen circumstances encountered in the sale of a business. Finally, the undersigned finds that CFS failed to prove its affirmative defense. Therefore, the undersigned recommends that the Bankruptcy Court decision be reversed and the case remanded to the Bankruptcy Court for entry of judgment in favor of Appellants and calculation of damages under the WARN Act.

### Sufficiency of Notice Content

The finding that CFS did not qualify for the unforeseeable business circumstances exception eliminates the necessity of discussing most of the other issues raised by Appellants.[5] However, the Court must still review whether the content of the

---

ing whether a particular business circumstance was reasonably foreseeable:

> The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer *in predicting the demands of its particular market*. The employer is not required, however, to accurately predict general economic conditions that also may affect *demand for its products or services*.

20 C.F.R. § 639.9(b)(2) [emphasis supplied]. Notably, although the test speaks in terms of the employer's business judgment, it focuses on commercially reasonable business judgment in relation to predicting the demand for the business' goods or services-the output of

the workers to be laid off. Although the Bankruptcy Court's discussion of the commercial reasonableness of CFS's decision-making concerning the sales process and layoff employs the language of the regulation, it does not address the subject of the regulation, which is predicting demand for the business's goods and services.

5. It makes no sense to discuss whether CFS was estopped from asserting a statutory defense to the sixty day notice requirement when the Court has determined that CFS does not qualify for that defense. The question of whether CFS provided as much notice as practicable is relevant only in the context of a valid statutory defense to WARN Act requirements.

notice was sufficient under the Act, as that determination will have a bearing on the calculation of the number of days of back pay and benefits due under 29 U.S.C. § 2104. Section 2104 provides that an employer in violation of the notice provision is liable to each aggrieved employee for back pay for each day of violation up to a maximum of 60 days. If the notice given was sufficient under the Act, then CFS will get credit for the number of days notice was provided.

■ The Bankruptcy Court found that the Notice CFS gave its employees was sufficient under the Act. The Appellants assert that the layoff Notice CFS provided to its employees was defective because it did not specifically identify the individual employees or the group of employees CFS intended to layoff. In fact, employees were not identified until the layoff began on January 8, 1999.

The WARN Act is silent as to the specific information that must be contained within the Notice. The Act states only that the Notice must be in writing and, in the case of non-union employees, must be served to "each affected employee." However, pursuant to Congressional direction, 29 U.S.C. § 2107, the Secretary of Labor has promulgated regulations which mandate that "all notice must be specific." 20 C.F.R. § 639.7(a). 20 C.F.R. § 639.7(d) provides that notice must be written in language understandable to the employees and must contain:

(1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

(3) An indication whether or not bumping rights exist;

(4) The name and telephone number of a company official to contact for further information.

That the Notice was in language understandable to employees was confirmed by the uncontradicted testimony of Plaintiff James Lemieux. The language of the Notice specified that the layoff would be permanent, that it would commence on January 8, 1999, that CFS anticipated a reduction of approximately 1800 positions, and that there might be further layoffs in the future. [R. Tab 21, p. 432]. The Notice further stated that CFS had not yet determined which individuals would be terminated, but that additional information would be provided when plans became more definite. It also provided company contact information. [R. Tab 7, Ex. I].

The Bankruptcy Court rejected Appellants argument that the Notice was not sufficient because it was provided to all CFS employees, not to "each affected employee" as required by the Act. The Bankruptcy Court found that on the date of the Notice, CFS did not know which employees would be affected by the downsizing. However, because CFS planned to eliminate half of its work force, CFS reasonably believed that all employees should receive notice that they may experience a loss of employment. *Memorandum Opinion* at 29. The Bankruptcy Court further found that the Notice effectuated the policies of the WARN Act to give employees the best and earliest notice possible under the circumstances. 20 C.F.R. § 639.7(a)(4) (information provided in the notice shall be based on the best information available to the employer at the time notice is served).

Relying on *Frymire v. Ampex Corp.*, 858 F.Supp. 1081 (D.Colo.1994), Appellants argue that a Notice directed to all employ-

ees does not qualify as a WARN Act notice. *Frymire* is inapposite. The district court in *Frymire*, held that the notice at issue was not sufficient. The defendant in that case argued that it notified its employees as specifically as it could regarding the details of its layoff. However, the court examined the two interoffice memorandum addressed to "all employees," which supposedly constituted notice, and concluded that they did not comply with WARN Act requirements in any respect. According to the court, the memoranda made no effort to identify affected employees individually or as a group of any impending layoff on any particular date. Further, "[i]t is not clear what purpose the memoranda were intended to accomplish, but it cannot reasonably be said to provide any kind of meaningful notice for affected employees. The Defendant may not circumvent the spirit and letter of the WARN Act by boldly asserting that was all we knew at the time." ' *Id.* at 1084. The *Frymire* decision was appealed, and reversed in part, *Frymire v. Ampex Corp.*, 61 F.3d 757 (10th Cir.1995). However, the sufficiency of the notice was not addressed by the Tenth Circuit and there is no Tenth Circuit precedent holding that notice of an impending layoff served on all employees cannot be a valid WARN Act notice as a matter of law. The district court opinion and result in *Frymire* do not control the result in this case as a matter of *stare decisis*. Furthermore, the rationale of *Frymire* is not instructive because the instant case is factually distinguishable.

The Bankruptcy Court reasonably determined that the act of giving notice of a mass layoff to *all* employees does not render an otherwise valid WARN Act notice invalid *per se*. In reaching this conclusion, the Bankruptcy Court cited regulatory language which requires an employer to notify employees "who may reasonably be expected to experience an employment loss as a consequence of a ... mass layoff by their employer." 20 C.F.R. § 639.3(e). The Court noted that the statute and regulations define "affected employee" from the employer's perspective in deciding who could reasonably "be expected" to experience an employment loss, and not whether the employee expected to be laid off as a result of the notice. The Court reasoned that an over-notification is preferable to under-notification because an employee who is given notice but is not laid off is not harmed by the notice. Furthermore, the phrase "reasonably be expected" offers room for uncertainty as to who will experience employment loss. *Memorandum Opinion* at 29, n. 36.

Although the regulations interpreting the WARN Act specify the information that must be included in a WARN Act, 20 C.F.R. § 639.7(d), they do not state that the Notice must *only* be given to employees who will be terminated. Rather, the regulations contemplate that information provided in the Notice will be based on the "best information available to the employer at the time notice is served." 20 C.F.R. § 639.6(b). The undersigned is not persuaded that the Bankruptcy Court erred in its determination that the content of the Notice was sufficient. Therefore, the number of days notice provided will be excluded from the damage calculation under 29 U.S.C. § 2104.

## V. CONCLUSION

Based on a review of the record and the foregoing analysis, the undersigned recommends that the decision of the Bankruptcy Court finding that CFS is not liable to the members of the Class for violating the WARN Act be REVERSED and REMANDED for calculation of back pay and benefits under 29 U.S.C. § 2104.

In accordance with 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within ten (10) days of being served with a copy of this report.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the district judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir.1996) (quoting *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991)). **Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.**