United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1097NE

| | | |
|---|---|---|
| Linda K. Burnsides, suing on behalf of | * | |
| herself individually and on behalf of | * | |
| a class of similarly-situated persons; | * | |
| Mary M. Sorg, suing on behalf of | * | |
| herself individually and on behalf of | * | |
| a class of similarly-situated persons; | * | |
| Gary Vyborney, suing on behalf of | * | |
| himself individually and on behalf of | * | |
| a class of similarly-situated persons, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Nebraska. |
| MJ Optical, Inc., Nebraska Corporation; | * | |
| Optical Illusion, Inc., Nebraska | * | |
| Corporation; Commercial Optical | * | |
| Company, Inc., Nebraska Corporation; | * | |
| Optical Services, Inc., Nebraska | * | |
| Corporation; C.O.C., Inc., Nebraska | * | |
| Corporation; Optical Services, Limited | * | |
| Partnership; Sheldon I. Rips, an | * | |
| Individual, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 8, 1997
Filed: November 10, 1997

_____

Before FAGG, LAY, and WOLLMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

After Commercial Optical Company, Inc. sold its equipment to MJ Optical, Inc., terminated its employees, and ceased operations, the former employees brought this action against MJ Optical, Commercial, Commercial's affiliated companies, and Sheldon I. Rips, Commercial's former president, director, and owner, asserting they failed to give the employees notice of employment loss in violation of the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. §§ 2101-2109 (1994). Following a trial, the district court granted judgment in favor of MJ Optical, Commercial, and the other defendants. The former employees appeal. We affirm in part, reverse in part, and remand for further proceedings.

Commercial operated an optical lens grinding and finishing facility in Omaha, Nebraska. After suffering significant financial losses in 1991 and 1992, Commercial sought financing and potential buyers in January and February 1993 without success. In March 1993, Rips began discussing a business consolidation with MJ Optical, another Omaha optical business. The parties signed a letter of intent on March 24, tentatively agreeing that MJ Optical would purchase most of Commercial's assets, including certain inventory, equipment, and customer accounts, and would take over operations at Commercial's plant for up to forty-five days, with the plant's later use left open for further negotiation. Rips believed MJ Optical would continue to employ Commercial's employees. Potential consideration for the transaction exceeded $1 million. Negotiations continued until Sunday, May 2, when Rips and Commercial's attorney met with MJ Optical's president, Michael Hagge, and his attorney at Commercial's plant. When Rips demanded a certain price, Michael Hagge indicated he was no longer interested and left. During the meeting, Martin Hagge, Hagge's son and second-in-command at MJ Optical, had inspected Commercial's facility. After the

meeting, he told his father the plant could not be operated profitably. Rips and Commercial's attorney discussed the company's dire financial situation, and decided to contact MJ Optical that evening and try to strike some kind of deal. Michael Hagge offered to buy Commercial's equipment and remaining inventory.

On Monday, May 3, Michael Hagge sent Martin Hagge to observe Commercial's plant in operation. Rips announced to employees that Commercial was selling substantially all of its assets to MJ Optical, but the employees would continue to work in Commercial's facility for MJ Optical. Rips introduced Martin Hagge as the new production manager, and Martin Hagge confirmed to employees who inquired that MJ Optical would have to have employees. Later that day, however, Michael Hagge decided MJ Optical would not take over operations at Commercial's plant, and informed his attorney to draw up papers to that effect. Between May 3 and May 5, attorneys for MJ Optical and Commercial drafted and revised an asset purchase agreement. On May 5, Rips signed the agreement in which MJ Optical offered to buy Commercial's equipment, tools, and supplies for $100,000, inventory for cost, and intangibles for $100. The agreement specifically excluded accounts receivable from the sale and provided MJ Optical would not assume Commercial's liabilities. The agreement set the closing on May 7, and provided that from closing up to 45 days later, MJ Optical would be allowed access to Commercial's building to remove the purchased assets, but prohibited from manufacturing there. Rather than transferring employees from Commercial to MJ Optical, the parties agreed that Commercial would encourage its employees to apply for employment with MJ Optical.

At about 3:00 p.m. on May 7, Commercial informed its employees about the sale of assets and closing of the facility that day. Commercial's attorney, comptroller, and human resource manager all addressed the employees. Michael Hagge told Commercial's employees that MJ Optical wanted to hire as many people as possible, and the employees should apply. Later that afternoon, MJ Optical began removing equipment from Commercial's building. Some former Commercial employees later

applied with MJ Optical.  MJ Optical hired some of the applicants and rejected others.

WARN generally requires that before any plant closing, an employer must give sixty days' notice in writing to each affected employee.  See 29 U.S.C. § 2102 (1994).  A "plant closing" is a shutdown of a single site of employment that causes an "employment loss" for fifty or more employees during a thirty-day period.  See id. § 2101(a)(2).  An "employment loss" includes employment termination, that is, the permanent cessation of the employment relationship.  See id. § 2101(a)(6).   In exclusions from the definition of employment loss, WARN provides:

> In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing . . . in accordance with section 2102 of this title, up to and including the effective date of the sale.  After the effective date of the sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing . . . .

Id. § 2101(b). The subsection "allocates notice responsibility to the party who actually makes the decision that creates an 'employment loss,' but 'creates no other employment rights.'" International Alliance of Theatrical & Stage Employees v. Compact Video Servs., Inc., 50 F.3d 1464, 1468 (9th Cir.) (quoting  20 C.F.R. § 639.6), cert. denied, 116 S. Ct. 514 (1995).

The employees argue MJ Optical was responsible for giving them notice under § 2101(b).  We doubt that § 2101(b) applies to the mere sale of assets in this case.  Congress enacted the subsection to clarify that when employees are transferred from seller to buyer as part of a sale, employees have not suffered an employment loss.  See Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1280-81 (10th Cir. 1994) (White, J.).  Courts have held that § 2101(b) does not apply to asset sales when there is no transfer of any employees into the purchaser's employment along with the purchased assets.  See Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin., Inc.,

898 F. Supp. 451, 457 (S.D. Tex. 1995).  We need not resolve the issue here, however.  Even if this case involves the "sale of part or all of an employer's business" within the meaning of § 2101(b), responsibility for giving notice never passed to MJ Optical because the plant closing occurred on the sale's effective date.  Through the end of that day, the employees were still employed by Commercial.  See Hotel Employees Restaurant Employees Int'l Union Local 54 v. Elsinore Shore Assocs., 724 F. Supp. 333, 335 (D.N.J. 1989) ("whoever is the employer at the time of the plant closing is responsible" for giving notice).  Commercial brought about the employment loss by deciding to accept MJ Optical's offer to purchase the manufacturing equipment without transferring employees. Commercial terminated the employees, and MJ Optical had no reason to give the employees notice.  MJ Optical did not automatically hire Commercial's employees, buy Commercial's facility, conduct any operations there, or take on any of Commercial's receivables or liabilities.  Relying on 29 C.F.R. § 639.4(c), which states responsibility for giving notice remains with the seller "up to and including the effective date (time) of the sale," the employees argue the sale became effective at closing on the morning of May 7, and responsibility for giving notice transferred to MJ Optical then, before Commercial fired the employees or closed the plant.  We reject the employees' interpretation of § 2101(b) because it is contrary to the plain terms of the statute.  Under § 2101(b), the seller is the party responsible for giving notice during the effective date of the sale, and the asset purchase agreement declared it was "effective [the] 7th day of May."  In sum, we conclude Commercial, not MJ Optical, was responsible for giving the employees notice.

The district court concluded two of WARN's affirmative defenses excused Commercial from the sixty-day notice requirement. Under 29 U.S.C. § 2102(b), the sixty-day notification period may be shortened if the employer shows the existence of certain circumstances.  First, an employer need not give sixty days' notice if, at the time notice would normally be required, the employer was actively seeking capital or business to avoid or postpone the plant closing and the employer reasonably believed the giving of notice would have prevented the employer from obtaining the needed

-5-

capital or business. See id. § 2102(b)(1). Second, an employer may order a plant closing before the sixty-day notice period concludes if the closing "is caused by business circumstances that were not reasonably foreseeable [when the sixty-day] notice would have been required." Id. § 2101(b)(2)(A). In either situation, the employer "shall give as much notice as is practicable and . . . a brief statement of the basis for reducing the notification period." Id. § 2102(b)(3); see Local Union 7107 v. Clinchfield Coal Co., No. 96-1731, 1997 WL 562195, at *1 (4th Cir. Sept. 11, 1997).

The employees argue the defenses in § 2102(b) do not apply to the facts of this case. We agree that the actively seeking capital or business defense in § 2102(b)(1) is inapplicable. The district court found Commercial was seeking financing between March 7 and May 7, and any notice of a plant closing before May 7 would have doomed Commercial's efforts. But the undisputed evidence, including Rips's own testimony, shows Commercial was not seeking capital or business after February 1993. The district court also concluded MJ Optical's May 5 decision not to continue Commercial's operations as the parties had previously planned was an unforeseeable business circumstance under § 2102(b)(2). An unforeseeable business circumstance is "a sudden, dramatic, and unexpected event outside the employer's control." Loehrer v. McDonnell-Douglas Corp., 98 F.3d 1056, 1061 (8th Cir. 1996); see 20 C.F.R. § 639.9(b)(1). The test for reasonable foreseeability focuses on an employer's commercially reasonable business judgment. See Loehrer, 98 F.3d at 1060, 1061; 20 C.F.R. §§ 639.9(b)(1)-(2); Teamsters Nat'l Freight Indus. Negotiating Comm. v. Churchill Truck Lines, Inc., 935 F. Supp. 1021, 1026 (W.D. Mo. 1996), aff'd, 121 F.3d 447 (8th Cir. 1997) (per curiam). Commercial did not have to show it was not economically feasible to wait sixty days before closing the plant. See Loehrer, 98 F.3d at 1061-62 n.7.

We conclude the closing of Commercial's facility was caused by business circumstances that were not reasonably foreseeable on March 7, 1993. At that time,

Commercial was negotiating a sale of its business that included a transfer of employees to MJ Optical. Had the sale occurred as contemplated, it would not have caused a plant closing triggering WARN's notice requirement. Commercial exercised commercially reasonable business judgment in believing the sale would go through according to the March letter of intent. As it turned out, Michael Hagge decided at the last minute not to continue Commercial's operation and instead offered to purchase only certain assets. After MJ Optical's eleventh-hour change of heart, Commercial reasonably decided to cut its losses by selling its equipment to MJ Optical and closing the plant.

The employees argue the unforeseeable business circumstances defense should not apply when parties negotiate a sale including a transfer of employees for months and then change their minds at the last minute. The employees argue that application of the defense in these circumstances encourages collusion between a seller and buyer to avoid WARN liability. There is no evidence of collusion to avoid WARN in this case. Indeed, the employees' baseless collusion theory ignores the obvious: Commercial had a strong motive to bargain for transfer of its employees to avoid triggering WARN's notice requirement. Despite this incentive, Commercial found itself compelled to accept terms dictated by the only interested buyer willing to offer some payment for assets of the unprofitable business. Also, the March 24 letter of intent makes clear the parties had only tentatively agreed to consummate a sale with a definitive agreement yet to be negotiated.

Nevertheless, when Commercial agreed on May 5 to sell its equipment to MJ Optical without transferring the employees, Commercial had an obligation to notify the employees that they would lose their jobs in two days. See Teamsters Nat'l Freight, 935 F. Supp. at 1026 (unforeseeable business circumstances defense still requires employer to give as much notice of closing as practicable once causal event becomes known). Commercial should have notified the employees then and explained why sixty days' notice was not given. Although the district court found Rips knew or

should have known when he signed the asset purchase agreement on May 5 that Commercial's employees would not be transferred, the district court did not hold Commercial responsible for failing to give notice on that date because of the court's incorrect view that notice before May 7 would have doomed Commercial's efforts to obtain financing. The district court also did not address the employees' assertion that Commercial cannot avoid liability for failing to give sixty days' notice because Commercial failed to give the notice or brief statement required by § 2102. Having rejected Commercial's financing defense, we remand for the district court to consider the employees' assertion and to calculate damages for Commercial's WARN violation. See 29 U.S.C. § 2104(a)(1) (employees are entitled to back pay and benefits for each day that an employer violates § 2102).

We affirm the district court's decision that Commercial rather than MJ Optical was responsible for giving notice under WARN, reverse the district court's decision that Commercial did not violate WARN, and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.