Amanda J. DINGLE, on behalf of herself and all other similarly situated, Plaintiff,

v.

UNION CITY CHAIR COMPANY and The Brittany Corporation, Defendants.

No. CIV.A. 99–137 Erie.

United States District Court, W.D. Pennsylvania.

Feb. 8, 2000.

Lawrence C. Bolla, Arthur D. Martinucci, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for Plaintiff.

David R. Johnson, Thomson, Rhodes & Cowie, Pittsburgh, PA, Gregory V. Mersol, Arter & Hadden, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiff, Amanda J. Dingle, filed this action on behalf of herself and all other similarly situated employees against the Defendants, Union City Chair Company and The Brittany Corporation. Union City Chair Company is a wholly owned subsidiary of Defendant The Brittany Corporation. Plaintiffs allege that Defendants failed to provide Union City Chair employees with a sixty day notice of the plant closing as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.,* ("the WARN Act").

Presently pending before the Court is the Defendants' motion for summary judgment. Because we conclude that the WARN Act does not provide the protection sought by the Plaintiffs, we will grant summary judgment in favor of the Defendants.

## I. BACKGROUND

Plaintiffs were employed by Union City Chair, a furniture manufacturing facility. On December 4, 1998, The Brittany Corporation sold its assets to an individual named Lance Johnson. As a result, Union City Chair sent its employees a letter informing them of the sale, and additionally

informing them that they were terminated as of December 4, 1998. Such correspondence explained that Mr. Johnson was under no obligation to offer employment to the employees of Union City Chair, however, representatives of the new company would be contacting them concerning the possibility of employment with the new company.

As of December 1998, Union City Chair had approximately 171 employees. (Frisby Aff. Exh. A.).[1] Of those employees, 66 had worked for the company for fewer that six months prior to October 4, 1998. (Frisby Aff. Exh. A). Of the employees who had worked for six months in the year prior to October 4, 1998, all but 22 began working for the new company on the next business day, namely, December 7, 1998. (Johnson Aff. Exh. A). Unfortunately for the Plaintiffs, they were not rehired by the new company.

Plaintiffs maintain that the sale of the assets of Union City Chair to Mr. Johnson triggered the notice requirements of the WARN Act and the Defendants failed to follow the provisions of the Act. Conversely, Defendants maintain that the sale did not trigger the requirements of the WARN Act, and rely upon an exclusionary provision contained in the Act.

## II. STANDARD OF REVIEW

## III. DISCUSSION

The WARN Act requires employers to provide sixty days advance notice to employees and communities regarding plant closings or mass layoffs. 29 U.S.C. § 2102(a). It is designed to provide workers, their families and communities with advance warning about the sudden loss of employment. 20 C.F.R. § 639.1(a); *Wiltz*

*v. M/G Transport Services, Inc.*, 128 F.3d 957, 960 (6th Cir.1997). If an employer violates the WARN Act, an employee may recover back pay, lost benefits, civil penalties and attorney fees. 28 U.S.C. § 2104(a)(1).

The Plaintiffs have characterized this situation as a "plant closing." A "plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees, excluding any part-time employees. 29 U.S.C. § 2101(a)(2). More simply put, the WARN Act's notification requirements are triggered by a plant closing involving an "employment loss" of 50 or more full-time employees.

The narrow issue before the Court is whether there has been an "employment loss." "Employment loss" is defined as: 1) an employment termination, other than a discharge for cause, voluntary departure, or retirement; 2) a layoff exceeding six months; or 3) a reduction in hours of work of more than 50 percent during each month of any 6–month period. 29 U.S.C. § 2101(a)(6).

The WARN Act sets forth certain exclusions from this definition, including:

(b) Exclusions from definition of employment loss

(1) In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title, up to and including the effective date of the sale. After the effective date of the

---

1. Defendants also suggest that the number of employees is 172. Such inconsistency in the actual figure is of no consequence; it is undis-puted that Defendants had more than 100 employees.

sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title. Notwithstanding any other provision of this chapter, any person who is an employee of the seller (other than a part-time employee) as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

29 U.S.C. § 2101(b)(1).

The Defendants contend that this sales exclusion applies and therefore there was no employment loss which would trigger the Act's notice requirement. The Plaintiffs argue that since the sale involved only the assets of Union City Chair, this exclusion is not applicable.

The two leading cases examining the sales exclusion provision are *Headrick v. Rockwell International Corp.*, 24 F.3d 1272 (10th Cir.1994) and *International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.* 50 F.3d 1464 (9th Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995). In *Headrick*, Rockwell was the plant managing contractor for the United States Department of Energy's plant at Rocky Flats for fourteen years. The DOE transferred Rockwell's responsibility under the contract to a new contractor. The new contractor assumed the plant's operation and hired Rockwell's former employees. No employee lost a single days wages or any accrued seniority. Two years later, the employees filed suit alleging, among other things, that Rockwell owed them damages for violating the WARN Act. The district court held that the Rockwell employees suffered no employment loss as a result of the transfer. The court did recognize however, that the employees had been technically terminated, but were in fact rehired by the new contractor just a "millisecond" after their termination from Rockwell. The court came to the conclusion that Congress never intended the Act to cover this situation; rather, Congress meant "employment loss" to cover only employees truly idled or deprived of income.

The Tenth Circuit determined that there was no need to debate what is meant by the word "terminate," since Congress itself foresaw this debate when it crafted the sales exclusion. The court stated:

> "... Congress explicitly stated that employees who find themselves transferred from one company to another because of a sale simply are not to be held by any court to have suffered a remediable 'employment loss'."

*Headrick*, 24 F.3d at 1280.

As a result, the court concluded that the sale of a business did not constitute an employment loss as contemplated by the statute, and stated "[a]ny argument to the contrary is simply foreclosed by the statute itself." *Headrick*, 24 F.3d at 1280. In examining the legislative history of the sales exception (after noting such analysis was hardly necessary), the court found further support for its conclusion. In reviewing the comments made by the author of the exclusion, the court found that Congress had added "clear marching orders" that no sale shall implicate the Act. *Headrick*, 24 F.3d at 1280–81. The court therefore affirmed the district court's granting of summary judgment in favor of Rockwell.

In *International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.*, 50 F.3d 1464 (9 Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995), the Ninth Circuit reached the same conclusion. Compact sold its unionized business to a nonunion entity. Only five Compact employees

were not retained by the new company. The district court granted summary judgment in favor of Compact based upon the sales exclusion. The Ninth Circuit focused on the accompanying regulation to the provision, which provides:

> This provision preserves the notice rights of the employees of a business that has been sold, but creates no other employment rights. Although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss.

20 C.F.R. § 639.6.

The court concluded that a sale of a business is not a WARN event, and since only five Compact employees suffered an "employment loss", summary judgment was proper.

Other courts construing the sales exclusion provision have also concluded that no "employment loss" occurs when the seller's employees are hired by the buyer. *See, e.g., Wiltz v. M/G Transport Services, Inc.,* 128 F.3d 957 (6th Cir.1997) (following *Headrick v. Rockwell International Corp.,* 24 F.3d 1272 (10th Cir.1994)); *International Oil, Chemical and Atomic Workers v. Uno–Ven Co.,* 170 F.3d 779 (7th Cir. 1999) (all but ten employees rehired by new employer; WARN Act excludes from definition of "employment loss" situation where sale of business results in technical termination of employment).

In the instant case, although technically there was a termination of the Union City Chair employees when Brittany Corporation sold its assets to Mr. Johnson, pursuant to the express provision of the Act,

such event, in and of itself, did not trigger the notice requirements. As such, there was no employment loss as contemplated by the Act. As the regulations indicate, WARN notice is only required where the employees, in fact, experience an employment loss. 20 C.F.R. § 639.6. Employees who were rehired do not fall within the purview of the Act since there is no need for retraining or alternative jobs.

It is undisputed that only 22 employees were not rehired by Mr. Johnson's new company. Such number falls well below the required 50 or more who suffer an employment loss in order to trigger the notice provisions of the Act.[2] As such, there was no employment loss and no WARN notice was required.

The Plaintiffs argue that an asset only sale does not fall within the sales exclusion exception, relying on *Oil, Chemical and Atomic Workers International Union v. CIT Group/Capital Equipment Financing, Inc.,* 898 F.Supp. 451 (S.D.Tex.1995). Such case held that an assets only sale is not encompassed within § 2101(b)(1), and only applies if the seller's employees are also transferred along with the purchased assets. No such limiting language is found in the sales exclusion provision, and we decline to apply such an interpretation, particularly in light of the fact that such provision has been broadly applied in a number of different sales scenarios, including asset sales. *See, e.g., International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.,* 50 F.3d 1464 (9th Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995) (asset sale); *Wiltz v. M/G Transport Services, Inc.,* 128 F.3d 957 (6th Cir.1997) (asset sale); *Headrick v. Rockwell International Corp.,* 24 F.3d 1272 (10th Cir.

---

**2.** In construing other provisions of the WARN Act, the Third Circuit utilized a practical analysis of whether a break in employment actually occurred to trigger the notification requirements of the Act. *Moore v. Warehouse Club, Inc.,* 992 F.2d 27 (3rd Cir.1993).

1994) (transfer of responsibilities to new contractor). Additionally, such a narrow construction has been specifically rejected by the courts. *See, e.g., International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.*, 50 F.3d 1464 (9th Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995) (rejecting argument that a sale of assets is not a sale of a business); *Headrick v. Rockwell International Corp.*, 24 F.3d 1272 (10th Cir.1994) (transfer of responsibilities to new contractor was a "sale" within meaning of WARN). Therefore, we respectfully decline to follow *Oil, Chemical and Atomic Workers International Union v. CIT Group/Capital Equipment Financing, Inc.*, 898 F.Supp. 451 (S.D.Tex.1995).

Our review of the record in this case and the applicable case law leads to the conclusion that the Plaintiffs did not suffer an "employment loss" as defined by the Act. Therefore, no WARN Act notice was required.

## IV.  CONCLUSION

Based upon the foregoing reasons, we conclude that the WARN Act does not afford relief to the Plaintiffs. We will therefore grant the Defendants motion for summary judgment.

An appropriate order follows.