# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3135

_____

| | | |
|---|---|---|
| Carles Joe Smullin, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| | * | |
| Mity Enterprises, Inc.; Do Group | * | |
| Holding, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: May 9, 2005
Filed: August 25, 2005(Corrected: 09/14/05)

_____

Before LOKEN, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

On Friday, November 8, 2002, Do Group Holding, Inc. ("Do Group"), sold the assets of its manufacturing plant in Marked Tree, Arkansas as a going concern to an unrelated buyer. The buyer interviewed the plant's sixty-eight employees over the weekend and hired forty-four. The plant opened on Monday, November 11, without a break in operations, making the same products with the same equipment in the same facility and selling those products to the same customers. Forty former Do Group

employees at the Marked Tree plant commenced this action, alleging that Do Group and its parent corporation, Mity Enterprises, Inc. ("Mity"), violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 et seq., by terminating the sixty-eight employees without giving the sixty-day advance notice required by 29 U.S.C. § 2102(a).

The WARN Act's sixty-day notice requirement applies to businesses that employ one hundred or more employees.  See 29 U.S.C. § 2101(a)(1).  The district court[1] granted summary judgment for the defendants on the ground that Do Group and other Mity affiliates are not a single employer, in which case Do Group employed fewer than one hundred employees.  Plaintiffs appeal.  Reviewing the grant of summary judgment de novo, see Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1279-80 (8th Cir. 1996), we conclude that we need not address the 100-employee question because the sale of the Marked Tree plant was a sale of business that did not result in an employment loss under the WARN Act.  Accordingly, we affirm.

The WARN Act provides that a covered employer must give at least sixty days written notice of a "plant closing" or a "mass layoff." 29 U.S.C. § 2102(a). Relevant portions of the definitions of these operative terms are critical to this appeal:

**(a) Definitions**

(2) the term "plant closing" means the permanent or temporary shutdown of a single site of employment . . . if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more [full-time] employees;

(3) the term "mass layoff" means a reduction in force which (A) is not the result of a plant closing; and (B) results in an employment loss

---

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

at the single site of employment during any 30-day period for [at least 50 full-time employees];

(6) subject to subsection (b) . . . "employment loss" means (A) an employment termination, other than a discharge for cause . . . .

**(b) Exclusions from definition of employment loss**

(1) In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff . . . up to and including the effective date of the sale. After the effective date of the sale . . . the purchaser shall be responsible for providing notice for any plant closing or mass layoff . . . . Notwithstanding any other provision of this chapter, any person who is a [full-time] employee of the seller . . . as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

29 U.S.C. § 2101 (a)(2), (a)(3), (a)(6), (b)(1).

In the district court, plaintiffs argued that Do Group and Mity are a single enterprise and therefore a covered employer (the issue we do not consider); that the exclusion in § 2101(b)(1) does not apply to Do Group's sale-of-assets transaction; and that plaintiffs suffered an employment loss -- termination by Do Group -- before the asset sale became effective. A notable aspect of this argument is its complete disregard for the operative statutory terms "plant closing" and "mass layoff," which trigger the notice requirement in § 2102(a). A "plant closing" requires a "permanent or temporary shutdown of a single site of employment," which the regulations define as "the effective cessation of production or the work performed" by the facility. 20 C.F.R. § 639.3(b). This concept is facility-specific, not employer-specific. It is obvious, in our view, that there was no "shutdown" of the Marked Tree plant, which did not miss even a day of operation. Thus, there was no "plant closing."

A "mass layoff" requires a reduction in force that results in an employment loss for at least fifty employees at a single site of employment. The WARN Act's advance notice "provides workers and their families some transition time to adjust to the prospective loss of employment." 20 C.F.R. § 639.1(a). Therefore, "WARN notice is only required where the employees, in fact, experience a covered employment loss." 20 C.F.R. § 639.6. In this case, because the buyer immediately hired all but twenty-four of the Marked Tree plant's employees, fewer than fifty employees suffered an employment loss. Therefore, WARN Act notices were required only if the buyer's hiring must be ignored. That question brings the sale-of-business exclusion in § 2101(b)(1) into play.

The exclusion applies to "a sale of part or all of an employer's business." The Department of Labor's WARN Act regulations do not define a "sale of business" for purposes of § 2101(b)(1). The plaintiffs argue that § 2101(b)(1) does not apply to Do Group's sale of the Marked Tree plant because the sale took the form of a sale of assets, and the plant's employees were terminated by Do Group with no right to be rehired by the buyer. This argument is contrary to the plain language of the statute. In defining the universe of transactions for which the WARN Act deems the seller's employees to be employees of the buyer immediately after the sale, Congress did not use terms common to the tax-oriented world of corporate lawyers and investment bankers, such as "merger," "sale of stock," "sale of assets," and so forth. Congress instead used a more generic term, "sale of a business," which clearly connotes *any* transaction that transfers all or part of the employer's overall operations *as a going concern*. Construing the exclusion in this fashion is consistent with the purposes of the WARN Act because the buyer of a going concern is likely to retain a substantial proportion of the employees of the on-going business. Moreover, defining the exclusion in this generic fashion promotes compliance with the Act because buyers and sellers know when a transaction is intended to transfer a going concern and can determine who must give the WARN Act notice if a covered employment loss is likely to occur.

Prior cases have applied the § 2101(b)(1) exclusion consistent with this functional, common sense approach. In the leading case of Headrick v. Rockwell Int'l Corp., 24 F.3d 1272 (10th Cir. 1994), the court held that the exclusion applied to an agreement by which the private company managing operations at a government facility transferred its functions to a new contractor who promised continuity of employment. Therefore, the employees were deemed to be employees of the new contractor after the effective date of the transfer agreement, and no mass layoff occurred. In an opinion by retired Supreme Court Justice Byron R. White, sitting by designation, the court noted that construing this "exchange for consideration" as a sale of business for purposes of § 2101(b)(1) was consistent with the purpose of the exclusion, which "was added to the Act after some Members of Congress expressed concern that without it adventuresome plaintiffs, perhaps not unlike appellants here, might well urge a court to hold 'employment loss' to cover workers shifted from one employer to another as the result of a sale." 24 F.3d at 1280.

Similarly, in International Oil, Chemical & Atomic Workers v. Uno-Ven Co., 170 F.3d 779, 783-84 (7th Cir. 1999), the court in an opinion by Chief Judge Posner held that § 2101(b)(1) applied to an operating agreement that transferred management of the operations of a refinery to a new employer. And at least three cases have applied the exclusion to sale-of-assets transactions in which the buyer hired or retained substantially all of the seller's employees at the same facility. See Wiltz v. M/G Transp. Servs., Inc., 128 F.3d 957, 963-65 (3d Cir. 1997); Int'l Alliance of Theatrical & Stage Employees v. Compact Video Servs., Inc., 50 F.3d 1464, 1467-68 (9th Cir. 1995); Dingle v. Union City Chair Co., 131 F. Supp. 2d 441, 444 (W.D. Pa. 2000). By contrast, consistent with this going-concern principle, the court in Oil, Chemical & Atomic Workers International Union v. CIT Group/Capital Equipment Financing, Inc., 898 F. Supp. 451 (S.D. Tex. 1995), refused to apply § 2101(b)(1) so as to impose WARN Act notice responsibility on secured lenders who purchased refinery assets at a foreclosure sale.

As support for their contention that § 2101(b)(1) does not apply to sale-of-assets transactions, plaintiffs rely on our decision in Burnsides v. M.J. Optical, Inc., 128 F.3d 700 (8th Cir. 1997), cert. denied, 523 U.S. 1119 (1998). In Burnsides, the buyer initially agreed to purchase most of the seller's assets in an unprofitable business and to "take over operations" at the seller's plant for at least forty-five days. However, after further review, the buyer elected instead to purchase the seller's equipment and tools and remove them from the plant. The parties further agreed that the seller would encourage its employees to apply for employment with the buyer after the plant was closed. On the effective date of the sale, the seller ceased operations, shut down the plant, and terminated its employees. The employees sued both the buyer and the seller for failure to give WARN Act notices. We expressed doubt that § 2101(b) applied to "the mere sale of assets in this case," a transaction in which the buyer "did not automatically hire [the seller's] employees, buy [the seller's] facility, conduct any operations there, or take on any of [the seller's] receivables or liabilities." 128 F.3d at 702-03. Without deciding that question, we held that the seller, not the buyer, was responsible for giving the WARN Act notice even if the transaction was the sale of a business, because the seller was responsible for the plant closing that occurred contemporaneous with the sale.

Our decision in Burnsides was consistent with the going concern principle we adopt in this case. It is doubtful that the sale of assets in Burnsides comprised the sale of a going concern. But if it did, our decision was consistent with the Department of Labor's regulation allocating responsibility between the buyer and the seller when a sale-of-business transaction results in a plant closing. The regulation provides that, when the sale of a business results in a covered employment loss, the seller must provide the WARN Act notice if the plant closing or mass layoff occurs at or prior to the effective time of the sale, and the buyer must provide the notice if the covered event occurs after the sale. 20 C.F.R. § 639.4(c). In promulgating this regulation, the Department commented:

-6-

If a plant closing occurred as a result of the buyer's decision not to rehire the seller's workers, and the closing occurred after the effective time of the sale, the buyer is responsible for giving notice. This view is consistent with the statutory provision that the employees of the seller become the employees of the buyer immediately after the sale, with the intent of WARN that notice be given to workers who will suffer dislocations and with the reality of allocating responsibility for notice to the party to the transaction that actually makes the decision to order the plant closing or mass layoff.

Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042, 16052 (Apr. 20, 1989). In Burnsides, the plant closing was contemporaneous with the sale, so we placed the WARN Act notice obligation on the seller.[2]

Burnsides is consistent with our view that § 2101(b)(1) applies to a sale of assets that effects the sale of a business as a going concern. In this case, for example, if the sale of assets was the sale of a business as a going concern, as we have concluded, then the Marked Tree plant employees are deemed to be employees of the buyer after the sale, and a WARN Act notice was not required if fewer than fifty employees were not hired by the buyer. On the other hand, if the transaction was a sale of business for purposes of § 2101(b)(1) but a WARN Act notice was nonetheless required, then Burnsides (and the regulations) impose the notice obligation on the seller, if the plant closing or mass layoff occurred at or before the sale, but on the buyer, if the plant closing or mass layoff occurred after the sale, because the buyer then was the party who actually made the decision that caused the requisite number of employees to suffer an employment loss.

_____

[2]Our opinion in Burnsides took issue with the regulations for focusing on the effective time of the sale, rather than the effective date. 128 F.3d at 703. Though the timing of the plant closing on the day of the sale became an issue in Burnsides, without question the seller was responsible for the plant closing. Therefore, our decision properly imposed the WARN Act notice obligation on the seller.

Here, the Marked Tree plant was sold as a going concern, and the buyer continued operations, uninterrupted, in the same facility. Therefore, the transaction was the sale of a business for purposes of the exclusion in § 2101(b)(1), which means that each of the plant's employees "shall be considered an employee of the purchaser immediately after the effective date of the sale." The buyer did not shut down the facility, so there was no "plant closing" within the meaning of § 2101(a)(2). The buyer immediately hired forty-four of the plant's sixty-eight employees, which means there was no "mass layoff" within the meaning of § 2101(a)(3). Accordingly, no WARN Act notice was required under § 2102(a), and the district court properly granted summary judgment dismissing the plaintiffs' WARN Act claims.

The judgment of the district court is affirmed.

_____